[Crim. No. 466. First Appellate District.—May 20, 1914.]

## THE PEOPLE, Respondent, v. FRANK A. HARDEN, Appellant.

CRIMINAL LAW—COMMISSION OF LEWD ACT UPON CHILD—COMPETENCY OF CHILD AS WITNESS.—In a prosecution for the commission of a lewd and lascivious act with a child hardly six years of age, the court does not abuse its discretion in permitting the child to testify as a witness.

ID.—INCOMPETENCY OF CHILD AS WITNESS—BURDEN OF PROOF—REVIEW ON APPEAL.—The burden of showing the incompetency of the child, within the meaning of section 1880 of the Code of Civil Procedure, is upon the party objecting, and the determination of the trial judge is conclusive upon an appellate court in the absence of an affirmative showing of an abuse of discretion.

ID.—EVIDENCE—INSUFFICIENCY TO SUPPORT CONVICTION BECAUSE IMPROBABLE AND DISCREDITED.—In this prosecution for committing a lewd and lascivious act with a child the testimony of the child and its mother, upon which the conviction is based, is in an essential feature so thoroughly discredited, and in part so inherently improbable, as to render it upon the whole of little, if any, value as evidence, and the appellate court is justified in assuming that the verdict obtained was the result of passion or prejudice rather than a calm and impartial judgment resulting from a dispassionate consideration of the evidence.

ID.—APPEAL—CONCLUSIVENESS OF VERDICT IN CASE OF CONFLICTING EVIDENCE.—Appellate courts will not ordinarily disturb a verdict upon the ground of insufficiency of the evidence in case of a conflict, but this rule is departed from in exceptional cases where the preponderance of evidence against the verdict is so great as to produce a conviction that in rendering it the jury must have been acting under the influence of passion or prejudice.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. George H. Cabaniss, Judge.

The facts are stated in the opinion of the court.

A. G. Lyon, for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

THE COURT.—The defendant in this case after two trials was convicted of the felony defined by section 288 of the Penal Code. He was sentenced to twelve years confinement in the state prison at San Quentin. The appeal is from the judgment and the order denying him a new trial.

The information generally follows the language of the statute defining the crime of which the defendant was convicted.

A reversal is urged primarily upon the ground of the insufficiency of the evidence to support the verdict. Incidentally it is insisted that the trial court abused its discretion in permitting the child alleged to have been the victim of the crime to be sworn, and to testify as a witness upon the trial. At the close of the trial of the case the child was within one month of being six years old; but we are not prepared to say that the ruling of the trial court permitting her to be sworn and to testify as a witness, was an abuse of discretion. Upon the objection of the defendant that the child was under ten years of age, and apparently incapable of receiving just impressions of the facts concerning which she was to be examined, she was subjected to a very thorough examination as to her competency by the trial court. We think it was sufficiently shown that she knew the difference between truth and falsehood and appreciated the moral obligation to tell the truth. The burden of showing the incompetency of the child, within the meaning of section 1880 of the Code of Civil Procedure, was upon the party objecting (*People* v. *Craig,* 111 Cal. 460, [44 Pac. 186]), and the determination of the trial judge is conclusive upon this court in the absence, as here, of an affirmative showing of an abuse of discretion. (*People* v. *Bernal,* 10 Cal. 66; *People* v. *Baldwin,* 117 Cal. 244, [49 Pac. 186]; *Clark* v. *Finnegan,* 127 Iowa, 644, [103 N. W. 970].)

No claim is made that the testimony of the child, if capable of belief, is not alone sufficient to support the verdict, but in this behalf it is earnestly urged that her testimony and that of her mother, when considered in the light of many and material contradictions, and in conjunction with the conduct of the mother following the commission of the offense, must be held by this court to be so inherently incredible as to be no evidence at all.

Briefly stated, the record shows the facts and circumstances immediately preceding and attending the commission of the offense to be as follows: The defendant was a married man living with his wife and nine year old daughter. On the second day of January, 1913, the defendant in person rented from the mother of the child housekeeping apartments in the second story of a dwelling-house in San Francisco, the lower floor of which was then occupied as a home by the mother and her child. On the third day of January, 1913, the defendant went to the home of the mother for the purpose of sweeping the apartments which he had rented, and while thus engaged the child entered the apartments. The child was the only witness who testified to the actual commission of the offense; and her story, as told in her testimony, is to the following effect: She with her little broom joined the defendant in the work of sweeping, and while so engaged the defendant committed the alleged offense. Thereupon the child went downstairs in response to a call from her mother. In passing it may be well to note that the mother subsequently testified that when she called to the child to come downstairs "Mr. Harden (the defendant) stepped to the doorway and said that she was having a good time, and begged me to let her stay there when she was having a good time. I at first told him no, and then . . . I said that she could stay." The defendant, as a witness in his own behalf, while admitting the presence of the child in his apartments on the occasion referred to, absolutely denied the story of the child. The testimony of the child upon direct and cross-examination with reference to the details of many minor, but nevertheless material matters, is in manifest conflict. A discussion of those details might in part serve to show the uncertain and unsatisfactory nature of the child's testimony. Such a discussion, however, is not absolutely necessary to the development of the paramount point in the case, and therefore a due regard for decency prompts us to pass on to other features of the child's testimony which alone will suffice to serve the purpose in hand.

Upon direct examination the child stated that she had told her mother all of the things concerning the defendant's conduct which she had testified to in court. She was positive that she did not tell her mother of what the defendant did to

her until after he moved in, but how long after she could not remember. She did not know how long a day or a week was. Her mother told her never to go to the defendant's apartments again. At first she said that she never again went upstairs to the defendant's apartments, and then she said that she had gone there on several occasions and alone for the purpose of playing with the defendant's child. During the cross-examination it was admitted by the district attorney that the child had "testified correctly" at the preliminary examination. Thereupon the record of the child's testimony as given at the preliminary examination was read in evidence, wherein it appears that she knew how long a day was; that she knew that "every seven days is Sunday," and that five Sundays had passed before she told her mother of what the defendant had done to her. At this point in the cross-examination the record of the child's testimony as given upon the first trial of the case was read in evidence, which showed the following questions and answers:

"Q. Did you tell her the same day? A. Well, yes. Q. Wasn't it five or six days afterwards? A. No, the same day in the night time. Q. The same day in the night time you told her? A. Yes. Q. Now, Maxine, you remember, little girl, that you testified before in this case . . . ? A. Yes. Q. . . . Did you tell the other judge that you did not tell your mother until five Sundays went by? A. I don't remember. Q. Don't you think it was five Sundays passed before you told your mother? A. No. Q. Didn't you tell the judge that? A. I don't remember. Q. Now, Maxine, do you tell me now, and all these gentlemen, that you told your mother the same night? A. Yes. Q. . . . They (the Hardens) have a little baby, haven't they? A. Yes. Q. And you used to go up there every day and play with the little baby? A. Not every day. Q. Almost every day? A. Yes, Q. And mamma went up with you? A. Yes, sir. Q. And Mr. and Mrs. Harden were there? A. Yes. Q. And mamma did not tell you to keep away from there? A. No."

Further along in the cross-examination of the child she testified that after she had first told of the defendant's misconduct her mother had not mentioned the subject to her again, and that her mother did not tell her what she was to say upon the trial. Here the record of the child's testimony taken at

the preliminary examination was again called into evidence, and showed that she had testified that her mother had told her what to say at the preliminary examination concerning the alleged conduct of the defendant, and also to say that she had told her mother of such conduct on the day of its occurrence.

It will thus be seen that the testimony of the child upon the second trial of the case concerning the time when she told her mother of what the defendant did to her is in pronounced and irreconcilable conflict with her testimony upon the same subject given at the first trial of the case, and that her testimony upon both trials in the particular stated was hopelessly at variance with her testimony as given at the preliminary examination. We cannot conceive of a plausible theory, and none has been suggested, upon which the jury might have rightfully reconciled the manifest and material variance in the child's testimony as given at various times upon the vital question as to when she first informed her mother of the defendant's conduct; and the clear conflict in her testimony as given from time to time relative to the equally important question as to whether or not her mother had told her not to go to the defendant's apartments again, is apparently incapable of explanation. At all events, no explanation of the uncertainties and inconsistencies appearing in the child's testimony was made or attempted at the trial and no such explanation has been made or attempted here upon behalf of the people; and when we consider the uncertainties and apparently irreconcilable inconsistencies appearing in the child's testimony as a whole, in conjunction with the undisputed and unexplained fact that the child was told by her mother what to say with reference to certain essential features of the alleged offense, we are of the opinion that the question of the defendant's guilt or innocence was not carefully and dispassionately considered by the jury.

This conclusion is fortified by a consideration of the mother's testimony. She testified upon cross-examination in substance that, notwithstanding the fact that the child had informed her of the offense within two or three days after its commission, she never mentioned the subject to either the defendant or his wife; that thereafter the child, with the knowledge of the mother, visited the apartments of the de-

fendant to play with the latter's child; that on several occasions during six or seven weeks following the offense she, the mother, visited the family of the defendant; that such visits occurred as often as two or three times a week, and that upon some if not all of those occasions the defendant was present; that the defendant upon at least one occasion after the alleged commission of the offense, entered her apartments and conversed with her generally. In short, it is an undisputed and unexplained fact in the case that for six or seven weeks following the alleged commission of the offense as told by the child the mother of her own volition cultivated and continued friendly social relations with the defendant and his family. This admitted and unexplained fact tended strongly, we think, to show either that the child had not told her mother of the alleged offense, or that the mother gave no credence to the story told by the child. This must be so, we think, because it is altogether inconceivable that the mother would so long suffer in silence the shame and indignity alleged to have been inflicted upon her child. Without exception the first impulse of a mother would be to openly denounce the defilement of her daughter, and then drive the defiler from her home into the hands of the police. That the mother did not do so in the present case seems to us to be inherently improbable, and was a circumstance which, unexplained and considered in conjunction with the clear contradictions appearing in the testimony of the child, utterly discredited in its entirety the evidence upon which the conviction of the defendant rests. Under such circumstances "it is inconceivable that a jury, free from passion or prejudice, would not at least have entertained a reasonable doubt as to the guilt of the defendant" (*People* v. *Hamilton,* 46 Cal. 540). In other words, it is our opinion that the testimony adduced upon behalf of the people in the present case was in an essential feature so thoroughly discredited, and in part so inherently improbable, as to render it upon the whole of little if any value as evidence; and therefore we are justified in assuming that the verdict obtained was the result of passion or prejudice rather than a calm and impartial judgment resulting from a dispassionate consideration of the evidence. (*People* v. *Benson,* 6 Cal. 221, [65 Am. Dec.

506], *People* v. *Brown,* 47 Cal. 447; *People* v. *Ardago,* 51 Cal. 371.)

In arriving at this conclusion we are not unmindful of the general rule, and the reason therefor, that appellate courts will not ordinarily disturb a verdict upon the ground of insufficiency of the evidence when there is conflict in the evidence. As was said in the case of *People* v. *Hamilton,* 46 Cal. 540: "The rule is a most salutary one, and ought not to be lightly departed from. Nevertheless there are exceptional cases, in which the preponderance of evidence against the verdict is so great as to produce a conviction that in rendering it the jury must have been under the influence of passion or prejudice . . . A charge of so heinous a nature, when supported by even the slightest evidence, arouses in the public mind an intense indignation against the supposed culprit; and it is not surprising that the same feeling sometimes finds its way into the jury box. That it did so in the present case we have no doubt."

The language just quoted applies with peculiar aptness, we think, to the facts of the case at bar. Upon the whole we are convinced that the ends of justice will be best subserved by a reversal of the judgment, and if necessary a retrial of the case. While it is not apparent that upon a new trial the testimony of the child could be truthfully reconciled and rendered more certain; or that the mother of the child might at this late date satisfactorily explain her conduct in the premises, nevertheless those are questions which the lower court and the district attorney, in the exercise of a sound discretion must determine.

For the reasons stated the judgment and order appealed from are reversed.