[Crim. No. 281. Third Appellate District.—February 13, 1915.]

THE PEOPLE, Respondent, v. L. E. PRICE, Appellant.

CRIMINAL LAW—RAPE—SUFFICIENCY OF EVIDENCE.—In this prosecution for the crime of rape alleged to have been committed upon a female under the age of consent it is held that the evidence was sufficient to support a verdict of conviction of an attempt to commit the crime.

ID.—EVIDENCE—OPINION—PENETRATION OF SEXUAL ORGANS.—In such a case, inasmuch as the conviction was for an attempt to commit the crime, there was no prejudicial error in excluding the testimony of the prosecutrix' grandmother calling for an opinion as to whether the prosecutrix' sexual organs had ever been entered by a human being.

ID.—INSTRUCTIONS—DEFINITION OF ATTEMPT.—In such a case a charge to the jury that, "You are instructed that an attempt to do or perform a particular thing is an effort or endeavor put forth to accomplish an act, coupled with a present intent so to do, which falls short

of the act intended," is not objectionable in failing to refer to any criminal act, where the preceding and following instructions showed that the jury could not have failed to have understood the reference to the crime charged.

ID.—INSTRUCTIONS—PREVIOUS ACTS.—In such a case the following instruction is not open to the criticism that it charges upon questions of fact: "The court instructs you that evidence of previous acts of sexual intercourse between the defendant and the prosecutrix and of improper familiarities on the part of the defendant toward and with the prosecutrix both before and after the time charged in the information, is received and admitted in evidence to prove the adulterous disposition of the defendant herein, and as having a tendency to render it more probable that the act of sexual intercourse charged in the information was committed on or about the 13th day of September, 1913, and for no other purpose."

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial. J. A. Plummer, Judge.

The facts are stated in the opinion of the court.

Henry C. McPike, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

CHIPMAN, P. J.—An information was filed against the defendant by the district attorney of San Joaquin County, charging the defendant with rape upon the person of one Nancy Baker, a girl under the age of consent. Defendant was convicted of an attempt to commit rape and sentenced to serve a term of ten years at San Quentin prison. He appeals from the judgment and from the order denying his motion for a new trial.

Appellant's brief is devoted chiefly to a discussion of the evidence and to a challenge of its sufficiency to support the verdict. The prosecuting witness testified that defendant had sexual intercourse with her—that there was actual penetration of her private parts. A physical examination of the girl by physicians shortly after the alleged crime, and other evidence created such doubt in the minds of the jury that they found the defendant guilty only of an attempt to commit the crime. It is hence argued that this finding of the jury, to-

gether with many circumstances and facts pointed out, shows that the story told by the girl is wholly unworthy of belief and in fact purely the creature of her imagination.

At the time of the alleged commission of the crime, defendant and his wife were guests of Nancy Baker's step-father and her mother who were living in a small house, in the city of Stockton, consisting of a sitting-room, back of which was a bedroom in which the parents slept and back of this another bedroom where their three girls—Nancy, aged 12; Ruth, aged 14, and the third much younger, slept. Opening on the side of this latter bedroom was a room used as a dining-room, back of which was the kitchen. The girl's bedroom was given to the guests and at night a mattress was laid in the dining-room at the kitchen door on which these three children slept, Nancy with her head toward their bedroom and the younger sister beside her and the older with her head at the other end of the mattress. Nancy's testimony was that, on Saturday night, September 13, 1913, defendant came to where she was sleeping and there had sexual intercourse with her. For the purpose of showing an adulterous or lascivious disposition toward this girl on the part of defendant the prosecutrix testified that, three days prior to the date named in the information, he had sexual intercourse with her, coming to her bed on the floor as on the later occasion; that when she and her sister were playing out doors near the house he put his hand under their clothing; that he came one night, prior to September 13th, to the place where they were sleeping and displayed his private parts and on another occasion he came to the door leading from the dining-room to the bedroom where he slept and attracted the attention of the girls, who were on the mattress, and again exposed his privates. Nancy also testified that, on the afternoon of September 13th, her mother and aunt (defendant's wife) were away; defendant bought some beer and cheese and gave the girls; that thereafter she went to her bedroom "to fix her hair" and defendant "threw her on the bed and he said, 'let me ——' ''; that "she called her sister and she came in and he hid in the closet." Ruth Baker corroborated Nancy's testimony concerning defendant's indecent exposure of his person; she also testified that she went to the bedroom when called by Nancy and the defendant was coming out of the closet and Nancy coming out of the door. Nancy made no

complaint and told no one of defendant's having tampered
with her the first time, but, the morning after the second like
occurrence (Sunday) she told her mother and Dr. Craviotto,
the family physician, was called. He testified that he made
a superficial examination and ordered the girl brought to his
office the next morning. Of this examination he testified:
"I found the hymen had been ruptured and the inflammatory
condition that I had seen on Sunday was very much more
than I anticipated." He took some specimens of secretions
and examined them under a microscope. He testified: "I
then called in Dr. Dozier, who was a specialist along this line
of microscopical work." He examined Dr. Craviotto's slides
and some made by himself. Both testified to having found
human spermatozoa. Defendant introduced expert testimony
which tended to show that the tests made by Dr. Dozier were
not made in accordance with the best approved methods to
determine with certainty the presence of spermatozoa, and
in some other respects disputing the conclusions reached by
Doctors Craviotto and Dozier. Certain facts were brought
out by defendant's witnesses and by the cross-examination
of the witnesses called by the people which tended in some
degree to show the improbability of the testimony of Nancy,
at least so far as actual intercourse with her by defendant
is concerned. Defendant also urged with much confidence
that Nancy and Ruth invented the entire story for the pur-
pose of retaliating upon defendant for having deprived them
of the comfort of their bedroom and thus compelling them
to sleep on the floor. There was no evidence tending in the
least to support this supposed motive and it rests entirely
upon the assumption that it was a natural thing for these
girls to do. We cannot believe that children of their age
would conceive and attempt to carry out such a scheme of re-
venge upon such slight provocation. We must assume that
the jury believed the testimony of Nancy and it was not
without corroboration. We must also assume "that the jury
reached a verdict with full realization of their sworn duty,
free from passion and prejudice and that the learned trial
judge was satisfied with the verdict or he would have granted
the motion for a new trial." (*People* v. *Lewis,* 18 Cal. App.
359, 364, [123 Pac. 232].) We cannot say that the story told
by Nancy was so obviously and inherently improbable as to
justify us in setting aside the verdict. She may have been

mistaken as to the fact of penetration and may have willfully lied as to that fact. Still that would not necessarily discredit the evidence which tended to show that there was an attempt to commit the crime. Dr. Dozier testified that the presence of spermatozoa in the vaginal canal could be accounted for without actual penetration of the male organ, by reason of their affinity for the secretions of a virgin and because of their mobility which would cause them by their own action to find their way from the outside into the vaginal canal.

Some objections to rulings of the court and to instructions will be briefly noticed.

Some questions were asked of the witness, Mrs. Boring, Nancy's grandmother, calling for an opinion as to whether Nancy's "sexual organs had ever been entered by a human being." Mrs. Boring was the mother of fourteen children and she testified that she had assisted many times at the birth of children. It is doubtful whether she qualified as an expert and it is by no means clear that had she done so the question would be admissible. The court refused the question. Inasmuch as the conviction was for an attempt, the ruling was without prejudice.

The court gave the following instruction: "You are instructed that an attempt to do or perform a particular thing is an effort or endeavor put forth to accomplish an act, coupled with a present intent so to do, which falls short of the act intended." The objection urged is that no reference is here made to any criminal act and that the jury is left to infer that an attempt to do or perform a particular thing, regardless of its character, would warrant a verdict of attempt to commit a crime. The preceding and following instructions show that the jury could not have failed to understand the court to have reference to the crime here charged.

The court instructed the jury as follows: "The court instructs you that evidence of previous acts of sexual intercourse between the defendant and the prosecutrix and of improper familiarities on the part of the defendant toward and with the prosecutrix both before and after the time charged in the information, is received and admitted in evidence to prove the adulterous disposition of the defendant herein, and as having a tendency to render it more probable that the act of sexual intercourse charged in the information

was committed on or about the 13th day of September, 1913, and for no other purpose." The criticism is that the charge is upon questions of fact; that it assumes first, that defendant has an adulterous disposition and second, that "some act of sexual intercourse between the prosecuting witness and the defendant was committed at some particular time, but that it was rendered more probable that it was committed on or about the 13th day of September, 1913." We do not think the instruction obnoxious to the objection urged. Its purpose was, as plainly appears, to inform the jury that evidence of acts of previous sexual intercourse is received as tending to render it more probable that the act of sexual intercourse charged was committed "and for no other purpose." It is not disputed that such evidence was offered and received and that it was admissible and for the purpose only as stated. It was quite proper, therefore, that the jury should be told of this limitation.

The judgment and order are affirmed.

Burnett, J., concurred.

HART, J., concurring.—I concur in the judgment for the reason that it appears that the testimony of the doctor who professionally examined the prosecutrix, and who said that, upon such examination, he found the existence of conditions or evidence indicating that the prosecutrix had been carnally known by some one of the male sex, furnished some corroboration of the child's story that some one had had sexual relations with her. Then there are the provisions of sections 1159 and 663 of our Penal Code, which expressly authorize a verdict of any offense the commission of which is included within that with which the defendant is charged, or (the last mentioned section) a verdict of an attempt to commit a crime, when the defendant is charged with such attempt, notwithstanding that the evidence may show that the crime intended was itself actually committed. The court instructed the jury that, under the law, they were at liberty to find the accused guilty of an attempt to commit the crime of rape, if the evidence was sufficient. It must be assumed, I presume, that the jury acted under that instruction, since the verdict was for an attempt to commit the crime.

But, were it not for the provisions of the code sections above referred to, I should say that the verdict necessarily implies that the jury discarded the story of the prosecutrix. I am not prepared to say that the verdict should not be so construed in any event. The prosecutrix unequivocally asseverated that the defendant actually had sexual intercourse with her. The jury say by the verdict that he did not and that the story of the prosecutrix as to the most important fact to which she testified was not true. Under this view, the verdict rests almost entirely upon the story of a witness whose testimony is, to some extent at least, discredited. But, as suggested, the law of this state authorizes such a verdict, and while some doubt necessarily arises as to the verity of the story of the prosecutrix, it seems to me, in view of the testimony of the doctor, that it can hardly be said, justly and as a matter of law, that the verdict is wholly without justification.

With perfect propriety, however, attention may be directed to the fact that in many other jurisdictions the higher courts have refused to uphold verdicts, such as the one here, which have been given in cases charging rape and in which the prosecuting witnesses have positively sworn that the crime as charged was actually committed by the accused. Indeed, in our own state, in its earlier judicial annals, the supreme court frequently displayed a disposition not to uphold convictions in this class of cases where the prosecutrix was not corroborated and where the acts constituting the charge were claimed to have been committed under such circumstances (similar to those here) as to create some doubt of the verity of her story. (See *People* v. *Benson*, 6 Cal. 221, [65 Am. Dec. 506]; *People* v. *Hamilton*, 46 Cal. 540; *People* v. *Ardaga*, 51 Cal. 371; *People* v. *Castro*, 60 Cal. 118; see, also, *People* v. *Harden*, 24 Cal. App. 522, [141 Pac. 1075].)

A case of singularly cogent pertinency to the present discussion is that of *State* v. *Mitchell*, a Kansas case, reported in 54 Kan. 516, [38 Pac. 810]. In that case the defendant was charged with the crime of rape, but the jury found him guilty only of an attempt to commit that offense. The court reversed the case upon the ground that the verdict was evidently the result of a compromise and founded solely upon the testimony of the prosecutrix who, the court said with much justification, was discredited and disbelieved by the

jury as to the most important fact involved in the charge against the accused. I need not take the time to quote from the opinion in that case, but I commend it as involving a forceful and instructive view of the proposition in hand.

The higher courts cannot too often emphasize the importance of the application by those required to determine the question of the guilt or innocence of persons accused of crime of the greatest care and circumspection in considering the evidence in cases of this character, as to which, as a general proposition, it may truly be said that popular prejudice against the accused, by some subtle or inscrutable means, finds lodgment in the jury box. As was well and correctly said, in the case of the *People* v. *Benson*, 6 Cal. 221, [65 Am. Dec. 506] : ''There is no class of prosecutions attended with so much danger, or which afford so ample an opportunity for the free play of malice and private vengence. In such cases, the accused is almost defenseless, and courts, in view of the facility with which charges of this character may be invented and maintained, have been strict in laying down the rule which should govern the jury in their finding.''

A petition for a rehearing of this cause was denied by the district court of appeal on March 15, 1915, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 14, 1915.