[Crim. No. 2418. Second Appellate District, Division Two.—September 12, 1933.]

THE PEOPLE, Respondent, v. AHMED ABDULLAH, Appellant.

Paul Barksdale D'Orr, Thomas A. Reynolds, A. L. Abrahams and Frank H. Love for Appellant.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

STEPHENS, J.—Ahmed Abdullah was convicted by the court sitting without a jury of two charges of rape upon a minor female person. Thereafter his motion for a new trial was denied and judgment was pronounced. He appeals from the judgment and from the order denying said motion. The girl's father, a widower, worked for appellant and lived with his daughter, a younger son and a woman house-

keeper in a house on appellant's premises, quite close to the latter's residence. Appellant operated a health farm or conditioning establishment on the outskirts of Los Angeles and lived on the place with his wife. At the trial an array of men and women of known probity and standing testified to their long acquaintance with appellant and to his good reputation. At the time of trial the complaining witness was enceinte. She testified with great diffidence, and a perusal of the transcript reveals the fact that her story was produced largely from leading questions to which answers in the negative or the affirmative were given. Many times her answers were simply, "I don't remember." The story briefly was that appellant came to the house in which the girl lived and, standing by the kitchen door, told her that he wanted her to be his sweetheart—that girls of her age could be married, or something to that effect. The housekeeper said she overheard this conversation, which was about if not quite all of the corroborating testimony in the case. Thereafter the girl went to appellant's house and the two had intercourse, which was repeated several times through the succeeding months, sometimes at appellant's home and sometimes at the girl's home.

While the prosecuting witness was being examined in chief appellant's counsel made the motion that the district attorney elect as to the specific acts, but the court denied the motion with the expression, "Any time within the three years. The specific date is not essential in this type of case." Later, however, the prosecutor elected to stand on two specific acts, in the following language: "We will elect as to these offenses, one in June and one in the fall; it is alleged September 25th, the date, and the court stated any time within three years, but if I understand counsel's position we have to elect as to the specific offense, so those will be the two specific offenses." The year is not mentioned, but the year 1932 must have been intended, for the immediately preceding questions referred to "last fall" and "last spring", and the date of questioning was April 28, 1933. This is made certain later on, when the district attorney specifically explained that counsel had mistaken his dates and that he referred to June, 1932. No doubt counsel was misled, because the information fixed the date as of June 1, 1931.

The main point raised by appellant is that neither of these specific acts has been proved.

The prosecutrix was fourteen years old on November 22, 1932, and testified that the illicit relations began when she was twelve, or after November 22, 1930, her twelfth birth-day. The information was filed February 9, 1933. It is clear that the three years' statute of limitations to which the court evidently referred in his ruling had not run. But the prosecutor had a greater duty than to produce general evidence of a series of acts extending over a period running into years. (*People* v. *Elgar,* 36 Cal. App. 114 [171 Pac. 697]; *People* v. *Castro,* 133 Cal. 11 [65 Pac. 13]; *People* v. *Currie,* 16 Cal. App. 731 [117 Pac. 941].) He had the duty of naming, identifying and proving a specific act within the statute of limitations for every count charged. The reason for this, as definitely held in numerous authorities by which we are bound, is well expressed in appellant's brief: "The policy of the law in these dangerous cases, so easy to charge and so difficult to meet, is sternly opposed to general statements, . . . and it is only where the acts are moored to some date or circumstance that the defendant can be expected to meet them. . . . A man charged with such a serious crime is entitled to an opportunity to defend and not merely to deny." As above stated, the evidence of the prosecuting witness in this case is to the effect that the illicit relations extended over a period beginning either in the fall of 1930 or the spring of 1931, and continuing into the fall of 1932. She does not remember how many acts there were, and although testifying upon the specific question that there were more than one, more than two, more than three, a reading of the testimony conveys the idea that there had been many. Parenthetically we may remark that the continued relation for so long a time without dis-covery between this mature man and this ignorant child just budding into puberty would be very remarkable; the more remarkable too when it is considered that several people lived in appellant's home and many visited the place daily, and more remarkable when we consider that the relation was begun, if we may believe the houeskeeper, following certain suggestive remarks by appellant to the girl—a plain warning.

 We shall proceed to examine the testimony as to the identification of the acts upon which the district attorney requested judgment of guilt. In all of the prosecutrix's testimony up to the request by appellant's counsel for an election of acts there is not a word as to a specific act—it is all general. Immediately afterwards her attention was drawn to the beginning of school in the fall of 1932. She answered "September." Every school child remembers the starting of school. She was not then asked if she remembered anything that happened about that time, but the specific, all-including question was put to her: "Now, about the time you started back to school did you have an act of sexual intercourse with Mr. Abdullah?" Her answer was, "Yes, ma'am. . . . Q. Where did that take place? A. I don't remember. Q. Well, did it take place at any other place than in Mr. Abdullah's house or in your house? A. No, ma'am." Then came the sort of questioning regarding the closing of school in the spring, a circumstance also well remembered by any child. The answer was "June," followed by the same question containing the same suggestion, to which the same affirmative answer was given and the same lack of memory shown as to place. It may be said that appellant's counsel should have objected to this method of examination. The answer is that he did object at the beginning of the examination and his objection was overruled. It is evident that the court and counsel were saving the child from further anguish, but in doing so a substantial right of the defendant was being neglected.

 We think the evidence as to these specific acts was so unsubstantial as to amount practically to no evidence at all. No circumstance is mentioned that designates any one particular act. It is almost definite proof that the prosecutrix was not indicating one specific remembered act, when she could not remember whether it happened at her house or appellant's house. There is not a circumstance surrounding or concerning the act related that indicates a memory of any identical act near or at the period designated by the district attorney.

This is a sad case. The little girl was obviously imposed upon by someone. The court's remarks at the conclusion of the trial are significant: "I think there was sufficient foundation, plenty of opportunity. The witnesses who testi-

fied were general in their remarks as to time and place. The child was scared. I have heard many of these cases and we have to come as near as we can. They saw them at about the time the act took place.'' These remarks strongly indicate that the court recognized the indefiniteness of the evidence, but that it still regarded the proof sufficient without identification of the specific acts if the proof of a series of acts fell within the period of statutory limitation. If there was opportunity for the act with appellant the evidence indicates that ample opportunity was open to others, who could with equal definiteness have been accused. The remarks indicate an abiding doubt in the court's mind—''we have to come as near as we can''. This is not the equivalent of proof beyond a reasonable doubt. The only support for the last statement of the court, ''They saw them at about the time the act took place,'' is the housekeeper's testimony that she saw appellant and the prosecutrix together at the kitchen door and heard him ask her to be his sweetheart. This was before the first act and could not have related to either of the alleged acts specified by the district attorney.

Gladys Abdullah, wife of appellant, testified that she was home a part of one of the days designated in the information and that nothing of the kind testified to by the prosecutrix occurred. The court struck this testimony out, saying that the witness was not present all of the time and consequently that it developed nothing. This was error. About the only way defendant could defend himself beyond his own denial was to show the unlikeliness of the truth of the accusation by showing that others were present at the time alleged or that he was elsewhere. The evidence was not conclusive, but the time could perhaps only be covered by piecing together the testimony of many.

We are impressed with the idea that the court was affected by the extreme pitifulness of the child's plight and in the emotion of the situation unwittingly overlooked substantial rights of the accused.

The judgment and order on both counts are reversed and the cause remanded for retrial.

Works, P. J., and Archbald, J., *pro tem.*, concurred.