[Crim. No. 1764.   Third Dist.   Oct. 15, 1941.]

THE PEOPLE, Respondent, v. RALEIGH M. FREMONT, Appellant.

J. Oscar Goldstein and Burton J. Goldstein for Appellant.

Earl Warren, Attorney General, and J. Q. Brown, Deputy Attorney General, for Respondent.

THE COURT.—An indictment was found against appellant, which consisted of three charges of statutory rape. For obvious reasons, the real names of the prosecuting witnesses do not appear in this opinion. Three of said charges were alleged to have been committed upon Jane Doe; two of said charges upon Elsie Roe; five of said charges upon Mary Black; and five charges of a violation of section 288 of the Penal Code in connection with the person of said Mary Black. The jury found him guilty upon all charges of rape except count IV, being one of the offenses involving Elsie Roe. He was found not guilty upon said count IV, and also upon all charges of violation of said section 288. His motions for arrest of judgment and new trial were denied, and he was thereupon sentenced to state prison upon three counts which the judgment provided should run consecutively, and as to the remainder of the charges, the terms should run concurrently. The appeal is taken from the order denying a new trial and the judgment.

The trial of the action consumed sixteen days, and the record thereof is spread over fourteen hundred pages of transcript.

It is first contended by appellant that "the indictment under which defendant was tried, and each and every count thereof, is fatally defective, and fails to charge a public offense or offenses." More specifically, it is urged that "the time when each or any of said alleged acts of rape and lewd and lascivious conduct is alleged to have occurred is not stated, nor can said time be ascertained from said indictment, nor from any count thereof." Section 955 of the Penal Code reads as follows:

"The precise time at which the offense was committed need not be stated in the indictment or information, but it

may be alleged to have been committed at any time before the finding or filing thereof, except where the time is a material ingredient in the offense.''

It is conceded by appellant that the time is not a material ingredient of the offense. In connection with this point counsel for appellant made the following statement in open court, at the commencement of the trial:

''There were two cases I believe which were cited by Mr. McPherson, and I concede that they were the law of the case, in which the expression was used by the Appellate and Supreme Court, that where the indictment alleges that the offense was committed within a certain period of time, and that was within the limitation prescribed by law, which within the extreme situation would be three years, that as far as the demurrer was concerned, or the motion to quash, or the motion to dismiss, it would not lie because of the fact that in cases involving a crime of rape or lewd and lascivious conduct particularly, that the matter of time in the indictment or information was not entirely material and was not subject to demurrer. . . . ''

Thus counsel practically concedes that there is little or no merit in the demurrer. We are satisfied that the indictment, in the matter of charging the time of the commission of the offense, complies substantially with the section quoted, and that the demurrer was properly overruled.

It is next urged by appellant that ''The District Attorney failed to elect the specific acts upon which he relied for a conviction of defendant on each of the fifteen counts of the indictment, and the trial court failed to instruct the jury on the doctrine of election and their duties in that regard.'' At the commencement of the trial, and in open court, appellant moved for an order directing the district attorney to ''elect on what specific date and time he relies for a conviction on counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, and 14 of the Indictment. . . . '' Count 15 named a specific date; the dates named in the other counts are as follows: Count I—''in the month of June, 1939''; Count II—''in the month of June, 1939, and subsequent to the time referred to in Count I''; Count III—''in the month of June, 1939, and subsequent to the time referred to in Counts I and II''; Count IV—''in the month of April, 1938''; Count V—''in the month of May, 1938''; Count VI—''on and between the

dates of July 4, 1939, and March 24, 1940''; Count VII—''on and between the dates of July 4, 1939, and March 24, 1940, at a time subsequent to the time referred to in Count VI''; Count VIII—''on and between the dates of July 4, 1939, and March 24, 1940, at a time subsequent to the time referred to in Counts VI and VII''; Count IX—''on and between the dates of July 4, 1939, and March 24, 1940, at a time subsequent to the time referred to in Counts VI, VII and VIII''; Count X—''on and between the dates of July 4, 1939, and March 24, 1940, at a time subsequent to the time referred to in Counts VI, VII, VIII and IX''; Count XI—''on and between the dates of July 4, 1939, and March 24, 1940''; Count XII—''on and between the dates of July 4, 1939, and March 24, 1940, at a time subsequent to the time referred to in Count XI''; Count XIII—''on and between the dates of July 4, 1939, and March 24, 1940, at a time subsequent to the time referred to in Counts XI and XII''; Count XIV—''on and between the dates of July 4, 1939, and March 24, 1940, at a time subsequent to the time referred to in Counts XI, XII and XIII.'' The district attorney thereupon replied:

''We have no objection to making an election at this time; we rely upon a date certain; speaking of Count No. 1, on a date certain in June of 1939; as to Count No. 2, rely upon a date certain in June of 1939; Count 3, we rely upon a date certain in June of 1939; in Count 4, we rely upon a date certain in April of 1938; in Count 5, we rely upon a date certain in May of 1938; in Count 6, we rely upon a date certain between the days of July 4th, 1939, and March 24th of 1940; the same is true of Count 7, Count 8, Count 9, Count 10, Count 11, Count 12 and Count 13 and Count 14 and Count 15.''

In criminal procedure there were formerly two elections which the court might require the people to make: one, between two or more counts of an indictment or information, and the other, arising out of proof, where the indictment charges but a single act and two or more are disclosed by the evidence. The former right of election existed prior to the enactment of our codes. Under section 954 of the Penal Code, ''The prosecution is not required to elect between the different offenses or counts set forth in the indictment or information, but the defendant may be convicted of any

number of the offenses charged. . . . '' As stated in 14 Cal. Jur. 69, sec. 53:

'' . . . if it is legally incumbent upon the People to make an election before any evidence is presented, there would be no efficacy in charging different offenses.''

Appellant's right of election therefore cannot be predicated upon the first method mentioned. ■ As to the second method, the right to compel an election arises when it appears from the people's opening statement, or the evidence, or otherwise, that more acts have been, or will be testified to than have been charged. The motion to compel an election was made prior to any of such occasions. It was not thereafter renewed. At the time it was made, only the information was before the court. There was therefore nothing before the court upon which the motion could be predicated. The motion was made prematurely. Even if it were made at the proper time, we can see no prejudice resulting from the failure of the court to compel an election. ■ Furthermore, the statement volunteered by the district attorney was sufficient under the circumstances.

The second contention of appellant is that the evidence is insufficient to support the verdict, in that ''the evidence of the prosecuting witnesses was so inherently improbable and unworthy of belief as to challenge one's credulity.'' In other words, appellant tacitly concedes that the evidence in the record is sufficient, *if it was worthy of belief*. It is incumbent upon appellant to convince this court that no person of ordinary and average intelligence could have believed the testimony of one or more of the three girls who appeared against him. Otherwise, the case would merely present the ordinary situation where there is a conflict in the evidence, and we would be bound by the verdict.

Appellant is a man 61 years of age. He was engaged in mining a number of years prior to the trial. His residence was at Yankee Hill, Butte County. Taking up the charges in the order in which they appear in the indictment, we now consider the first three counts, on which defendant was found guilty. Jane Doe testified that she was sixteen years of age. Her father was dead and she lived with her mother and four other children, two boys and two other girls. She was seventeen years of age just before the trial. She had known appellant about a year, and had met him through a school-

mate by the name of Mary Walker. He came over to see her in his tan-colored Pontiac automobile. After driving the two girls to Chico to see a show, he took Mary home first. At about midnight he was driving along the road with Jane, when he stopped. He then proceeded, while in the car, to remove her pants and accomplished an act of sexual intercourse. After the act was completed, appellant injected from a tube a jelly-like substance, which, he assured the girl, would prevent any harm. On the following night appellant again had intercourse with Jane Doe under practically the same circumstances. She testified that the tube mentioned was taken from a compartment of his car. Thereafter, and from July, 1939, to March, 1940, the witness testified that appellant accomplished some thirty-five similar acts. During that time appellant gave her a number of gifts, such as sweaters, candy and money.

Taking up the next two counts—IV and V—Elsie Roe was seventeen years of age, and lived with her family in Thermalito, Butte County. One night, (as she testified)—appellant met her at a dance and asked her to go to a show. He later took the family to a show, and in April, 1938, started regularly to take Elsie out. In April, 1938, she went to a mine with appellant. He took her into a cabin in which there was a day-bed. There he started loving her, put her on the bed and had sexual intercourse with her. After he was through he went through the same procedure as with Jane Doe. He produced a tube and made an injection in the same manner, telling her that ''he did not want me to have a baby, and that would prevent it.'' In May, 1938, Elsie, while riding with appellant in his car, drank liquor from a flask. She testified that she ''passed out,'' and when she regained consciousness, appellant was having intercourse with her. She was intoxicated, and made no objection. After it was over, appellant went through the same proceeding with his tube. Appellant presented her with money, dresses, a watch and a ring. Appellant offered in evidence a certain letter written by Elsie to her own father, which accused him of having committed incest upon her since she was 11½ years of age. She testified that she wrote this letter to her father under the guidance and command of appellant, who wished to have this done in order to clear himself—that the date of writing this letter to her father was June 24, 1938, and it was written in

an apple orchard. "Q. Calling your attention to the 24th of June, 1938, are you able to refresh your recollection as to where you were and what you did on that day? A. Yes, Mr. Fremont and I started to Paradise on that day, and that is the day we stopped at the apple orchard, and he made me write that letter to my father that I testified to yesterday; and it was on that day that he went up—after he had told me what to write and wanted me to copy the letter—while he was gone up to get Dorothy ——. That was the day he went after Dorothy —— and I wrote the letter to my father." She further testified that there were numerous nude swimming parties which were engaged in by herself and one Dorothy —— and others, at which appellant was present, but during which appellant did not disrobe. That appellant took nude pictures of the witness and her friend. It should be noted here that in a letter to Elsie the appellant threatened to send these nude pictures to her father if she did anything further about the investigation of appellant. This, we take it, is substantial corroboration of guilt. In this letter appellant also demanded the return of all his presents, claiming that Elsie was turning against him. Witness Williams, who worked on appellant's automobile at various times, testified that he occasionally cleaned out the pockets, and found therein a package of Kotex, a bottle of Listerine and a tube of Certain. The latter was identified by other witnesses as a jelly-like substance, which appellant always described as a contraceptive.

A physician testified in May, 1940, that he had examined all three girls, and that the hymen of each had been ruptured. He fixed the time of rupture, in respect to Mary Black, at from two months to a year prior to his examination. As to the two older girls, he testified that they had the same development as that of a married woman, indicating numerous acts of intercourse.

The third girl mentioned in the indictment is Mary Black, nine years of age, a pupil in the fourth grade, and a sister of Jane. She testified to six acts of intercourse with appellant, all committed while she was in his automobile. Appellant took her out in his automobile numerous times, and gave her clothes and candy. She testified to the use by appellant of a tube, in the same manner as the other two complaining witnesses. Appellant told her not to tell anyone.

██  Is the evidence of the prosecution so palpably false and incredible that it cannot afford a basis for the verdict? The general rule governing the situation is stated in 8 Cal. Jur. 590, section 582, as follows:

"A question at law is presented which authorizes an appellate court in setting aside a verdict, if the testimony relied upon by the prosecution is apparently so improbable or false as to be incredible and to amount to no evidence at all. If it is of this character, the court is justified in assuming that the verdict obtained was the result of passion or prejudice rather than a calm and dispassionate consideration of the evidence. To authorize a reversal under this rule, the improbability must appear very plainly. It has been said that the conclusions of the jury will be overruled only where the uncorroborated testimony of the complaining witness is so obviously and so inherently improbable as to leave no recourse, without self-stultification, except to reverse the judgment. The mere fact that there are contradictions and inconsistencies in the testimony of a witness, or that the truth of his evidence is open to suspicion, does not render it inherently improbable within the meaning of the rule. It is for the jury to consider such inconsistencies and determine whether they were such as to justify the repudiation of the testimony of the witness in its entirety. The test is not whether the witness is truthful, but whether it can be said the testimony in support of the verdict is inherently untrue. Nor is testimony inherently improbable merely because it is unusual or out of the ordinary. A statement, to bear upon its face the brand of improbability, or which may be said to be unbelievable, *per se,* must involve a claim that something has been done that it would not seem possible could be done under the circumstances described."

██  Appellant first takes up the case of Mary Black. He makes the serious charge that the testimony "not only shows that she completely changes her story as testified to before the Grand Jury, but clearly, convincingly and unerringly pointed to a situation of a young girl efficiently coached by someone to accuse the defendant of many heinous offenses against this young girl in order to destroy him forever." We have examined the portion of the record relied upon by appellant. We find nothing but the ordinary confusion in the mind of a nine-year-old child resulting from several days of

one of the most severe and searching cross-examinations that have come under our observation. True, the child could not, at times, give exact dates, nor could she define many of the words used by counsel on both sides. And yet, upon the salient facts, she seldom faltered or contradicted herself.

Appellant next attacks the testimony of Jane Doe. He contends that the witness denied her own handwriting on a postcard. He points out her "excellent recital of things that would be injurious to defendant, but remembering nothing else." Such matters were for the consideration of the jury, and should properly be urged in the final argument. We cannot say that the entire testimony is unworthy of belief.

The last witness was Elsie Roe. The chief attack in this case is made against the character of the prosecutrix. The evidence shows that she had made charges of illicit relations between herself and her father, and she admitted on the witness stand that they were mere fabrications. If we had been upon the jury we doubt if we would have accepted the word of this witness. And yet we cannot say that her story is inherently improbable and utterly unworthy of any credence whatever.

Appellant took the stand in his own behalf and denied all the charges, stating that he always treated the three girls as his own daughters.

Considering the record as a whole, we find a striking similarity in the method of approach upon the part of appellant in each case, and almost identical technique thereafter. The testimony of the garage attendant as to the finding of the various articles in the pocket of appellant's car, corroborates the story of each prosecuting witness. There are not only numerous acts, but they were committed upon three different girls. It is hardly conceivable that all three were deliberately falsifying. No charge is made that there is any evidence of a conspiracy. Neither is there any substantial evidence of a motive upon the part of any girl to avenge herself. Nor does it appear that there was any malice which would prompt a girl to fabricate such facts. It is true that a charge of this character is apt to arouse, in the minds of the jurors, intense indignation against the defendant, and that this might lead, even though the evidence is legally insufficient or inherently improbable, to a verdict based upon passion or prejudice. (*People* v. *Harden*, 24 Cal. App. 522 [141 Pac. 1075].) We

do not, however, regard the case in that category. There is no sufficient showing that the jury arrived at their verdicts in any manner other than by a calm and dispassionate consideration of the evidence.

■ Appellant points out certain facts which he states show the falsity of the account given by each complaining witness. He relies strongly upon the failure of any of them to make a complaint. The evidence strongly indicates that they made no objection to the acts of appellant. The jury may reasonably have so found. The charge is that of statutory rape, under the provisions of section 261, subdivision 1 of the Penal Code. It is true that failure to make a complaint is strong evidence against a claim of unwillingness, but it is not necessarily conclusive. (22 Cal. Jur. 385, section 32.) ■ Furthermore, the rule is predicated upon cases where rape by force and violence is charged. "It is natural that a woman violently assaulted and outraged should, at the earliest moment practicable, make *complaint of her injury,* and her omission to do so . . . would be regarded as strong evidence against her claim that she was an unwilling victim." (*People* v. *Wilmot,* 139 Cal. 103–105 [72 Pac. 838].) ■ Want of consent is not an element in the crime charged. (22 Cal. Jur. 375, section 22.) ■ Hence it follows that failure to make complaint has little weight or relevancy in a case of this character, although it is a fact which the jury may consider in connection with the credibility of the witness.

We do not deem it necessary to discuss the many cases cited by appellant. They all vary as to the facts, and are of no particular value as a precedent, except upon the legal principles laid down in each. As to appellant's statement of those principles, there can be no issue. Our summary of the law pertaining to this second contention, found in 8 Cal. Jur. 590, section 582, appears in his brief under the designation of the "general rule."

Although defendant has appealed both from the judgment and order denying motion for new trial, we find the latter ground is not mentioned in his briefs, and assume that he virtually abandoned that ground on this appeal.

The judgment and order are affirmed.

Appellant's petition for a hearing by the Supreme Court was denied November 13, 1941.