[Crim. No. 27314. Second Dist., Div. Four. Apr. 16, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
BARRY W. CREIGHTON, Defendant and Appellant.

## COUNSEL

Laurie Belger for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, A. Wells Petersen and John B. Moy, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KINGSLEY, Acting P. J.**—Defendant was charged with: (count I) unlawful sexual intercourse with Loren L., a female under the age of 18 years, in violation of section 261.5 of the Penal Code; (count II) commission of a lewd and lascivious act upon Loren L., a child under the age of 14 years, between October 6, 1972, and October 6, 1973, in violation of section .288 of the Penal Code; and (count III), unlawful sexual intercourse between August 6, 1971 and May 6, 1972, with Catherine L., a child under the age of 18 years, in violation of section 261.5 of the Penal Code. Under circumstances hereinafter discussed, count III was stricken by the court on the ground that prosecution for the offense therein charged was barred by the statute of limitations. After a jury trial, defendant was found not guilty on count I, but guilty on count II. He was granted probation; he has appealed; we reverse.

## FACTS

Defendant became acquainted with Joan L., the mother of the two girls herein involved, after Joan's divorce in 1969. Thereafter he had sexual relations with her and became a regular guest at Joan's home. He came to know all three of Joan's daughters and became somewhat of a father image to them. He would babysit the children on occasion. The defendant entered medical school in Mexico and spent most of the time out of the country from 1971 through 1974. When at home on vacations he spent considerable time at the L. home.

On July 31, 1974, William Henderson, a boyfriend of Catherine, was at the L. home. Prior to this date there had been an altercation in which the defendant had thrown Henderson out of the L. home. That night Henderson heard noises coming from the family room that he believed to be the defendant and Loren having sexual intercourse. He told Mrs. L. that he believed something was going on between the defendant and Loren. This was done early on August 1, 1974, (sometime between midnight and 3 a.m.) at Torrance Memorial Hospital where Mrs. L. was working. That morning, after returning home from work, Mrs. L. confronted Loren, who at first denied any sexual activity with the defendant but soon changed her story and said she had had sex numerous times with him including the night before. Mrs. L. called the police who sent Deputy Sheriff Evelyn Forbes to the L. home where Loren repeated her story. Deputy Forbes took Loren to Torrance Memorial Hospital for a pelvic examination. Sometime thereafter Mrs. L. asked Cathy whether she had ever "made love" with the defendant. Cathy said "yes," but had had no sexual relations in over two years.

The defendant was charged with three counts. One count, based on his alleged relations with Cathy, the oldest daughter, was dropped because of the statute of limitations after one day of testimony by Mrs. L. and Cathy. Defense counsel objected to Catherine's testimony and moved for a mistrial which was denied. Her testimony was allowed to continue. Dr. Eugene Carpenter, testified as an expert witness for defendant that, based on the report from Loren's pelvic examination, Loren had not engaged in sexual intercourse on July 31, 1974. The only date or individual act ever stated was July 31, although it was contended that it had happened "on numerous occasions." The jury evidently disbelieved the testimony regarding the July 31 date since they acquitted the defendant on count I which pertained to alleged sexual intercourse with Loren L.; the jury found the defendant guilty of count II, i.e.:

commission of a lewd and lascivious act upon Loren L. between October 6, 1972, and October 6, 1973, violating Penal Code section 288.

I

*Was CALJIC Instruction 4.71 a Proper Instruction
In This Case?*

CALJIC No. 4.71, reads: "When, as in this case, it is alleged that the crime charged was commited 'on or about' a certain date, if the jury finds that a crime was committed it is not necessary that the proof show that the crime was committed on that precise date; it is sufficient if the proof shows that the crime was committed on or about that date."

Defendant argues that: (1) the People did not prove even one specific act during the period alleged in count II of the information; (2) that CALJIC No. 4.71 was erroneously given to the jury by the trial court; and (3) the jury verdict, finding the defendant guilty of a violation of the Penal Code section 288, cannot stand.

The appeal on this issue is based upon a line of cases beginning with *People v. Castro* (1901) 133 Cal. 11 [65 P. 13] and People v. *Williams* (1901) 133 Cal. 165 [65 P. 323], which hold that where there are multiple acts placed before a jury, each being a separate similar chargeable offense in itself, the prosecution must elect the act on which the charge will stand. It cannot let the jurors range over the evidence at will and pick out any one of the offenses upon which to found its verdict. (See *People v. Hatch* (1910) 13 Cal.App. 521 [109 P. 1097]. Creighton argues that this case is comparable with *People v. Hatch, supra,* 13 Cal.App. 521 which states the following on page 535: "No court can say from this record of which offense proven under this indictment the jury found the defendant guilty."

He then points to *People v. Abdullah* (1933) 134 Cal.App. 155 [25 P.2d 40], which overturned a conviction under somewhat comparable evidence (i.e., testimony which was unable to come any closer than the beginning and ending of a school year and could not identify where the act took place) because it was too general and did not concern itself with any one act and was "so unsubstantial as to amount practically to no evidence at all." (134 Cal.App. at p. 159.) To prove viability of the doctrinal line, defendant points to *People v. Gavin* (1971) 21 Cal.App.3d 408 [98 Cal.Rptr. 518], decided in this district which overturned a

conviction on narcotics where the jury was confused by the "on or about" instruction and apparently convicted the defendant of an uncharged offense. Defendant's contention is that, here, the jury could have convicted the defendant of acts which were outside the statute of limitations.

The final argument given by defendant on this issue is found in the interpretation of *People* v. *Wrigley* (1968) 69 Cal.2d 149, 155 [70 Cal.Rptr. 116, 443 P.2d 580], that is found in *People* v. *Gavin* (1971), *supra,* 21 Cal.App.3d 408, 419-420. In *Wrigley* the "on or about" instruction was approved even though evidence showed lewd touchings on two occasions within a possible two-month period. In distinguishing *Gavin* (where the defendant had apparently been convicted of an uncharged crime due to jury confusion as to the "on or about" instruction) the court stated the following about the *Wrigley* case: "There was no contention that defendant was in danger of being convicted of an uncharged offense, or that part of the jury might think one offense proved and part think a different offense proved. The *Castro-Williams* situation was not before the court, and those cases were not discussed."

The defendant argues that these limitations of *Wrigley* are found in this case and *Wrigley* is therefore not controlling. He also argues that, as in *People* v. *Williams*, he is faced only with general evidence of a continuing crime with no single offense ever proven.

The prosecution argues that: (1) numerous acts were proven; (2) the *Castro, Williams* and *Abdullah* cases are distinguishable from this as they all involve offenses charged to specific dates while the evidence showed acts occurring over a period of time, while in this case no specific date was charged, but rather a time period was charged (one year); and (3) that *People* v. *Wrigley* supports the permissibility of the "on or about" instruction in this case where there is more than one act.

The prosecution is correct in that, if one act was proven to the satisfaction of the jury then numerous other acts must also have been proven. It is on the very number of acts that the defendant, in fact, can place his appeal. By increasing the time in which the jury may pick and choose to any time within the year charged, or for that matter any time within the three-year statute of limitations, it becomes nearly impossible for a defendant to use an alibi as a defense. This is permissible and reasonable where there is but one act to decide upon during the time period but is not acceptable where there are numerous acts.

A case not discussed by either the prosecution or the defense, of vital importance to this case is *People* v. *Whitacre* (1926) 79 Cal.App. 27 [248 P. 924]. In California Jury Instructions, Criminal, (3d ed.) page 130, in the comment under CALJIC No. 4.71, the following is found: "This instruction [4.71] would also be improper if the evidence establishes two or more similar offenses upon either of which the jury might convict under a given count. People v. Whitacre, 79 Cal.App. 27, 248 P. 924."

This rule is still valid and the court in *Wrigley* gave no indication that it had any intent to overrule *Whitacre*. ■ Under these circumstances, *Wrigley*, as read in light of *Gavin*, seems to be a limited area of exception to the more general *Whitacre* rule; that exception being that it is permissible to use an "on or about" instruction where there is more than one act shown by the evidence, only: if (1) there is no danger of the defendant being convicted of an uncharged offense, and (2) there is no danger of the defendant being convicted of an offense where part of the jury might think one offense and part might think another offense proved.

■ In this case the reading of CALJIC No. 4.71 was erroneous as it has undoubtedly allowed a situation where the jury could choose among numerous offenses which are almost impossible to identify and pick any one. In fact where they are so impossible to identify the only way they could possibly find the defendant guilty is by considering all of these offenses as one amorphous general offense which was proven. The instruction violates both the general rule laid down in *Whitacre* and also the limitations on *Wrigley* laid down in *Gavin*. The defendant is correct in that the judgment here suffers from the defect noted previously in *Hatch*.

The Supreme Court seems to have been more concerned with the comment to CALJIC No. 4.71 which states that "[t]his instruction is improper if People's evidence fixes the commission of the offense at a particular time to the exclusion of any other time and defendant has presented evidence of an alibi as to that particular time" in its considerations of the *Wrigley* case. This is shown by the statements in *People* v. *Jones*, 9 Cal.3d 546, 557 [108 Cal.Rptr. 345, 510 P.2d 705], where they state that they were, in *Wrigley*, specifically offering this rule and cases involved with that reasoning. The case should not be relied upon for reasoning as to the fact that there were two offenses and therefore the court was trying to overrule *Whitacre*. It is fairly certain they were trying to remove any doubt as to the one comment's validity not to destroy the other at issue in this case.

The court in giving this instruction did prejudice the defendant's case and, therefore, the judgment (order) must be reversed.[1]

## II

### Was the Trial Court's Failure to Grant the Defense Motion for Acquittal in Error?

On this issue the arguments of the defendant and the People are rather basic. Both consider *People* v. *Wong* (1973) 35 Cal.App.3d 812 [111 Cal.Rptr. 314], to contain a valid test for review of a denial of a motion for acquittal under Penal Code section 1118.1, although the defendant notes *People* v. *Reyes* (1974) 12 Cal.3d 486 [116 Cal.Rptr. 217, 526 P.2d 225], as a case expanding that test somewhat.

*People* v. *Valerio* (1970) 13 Cal.App.3d 912 [92 Cal.Rptr. 82], holds that there has to be substantial evidence of the existence of each element of the crime charged. *People* v. *Reyes* adds the following: "To be considered to be substantial, the evidence must be of a type which reasonably inspires confidence and is of solid value." (See 12 Cal.3d at p. 497.) *People* v. *Wong* held that, in applying the substantial evidence rule, where the trial court has denied an acquittal motion, the appellate court must assume in favor of the trial court's order every fact that the jury reasonably could have deduced from the evidence. The appellate court may not set aside the trial court's denial because of insufficiency of evidence unless it clearly appears that upon no hypothesis whatsoever is there sufficient substantial evidence to support the conclusion reached by the court below.

There is in this case substantial evidence of crimes before the trier of fact. What is not there is evidence as to an individual, specific crime. All the elements were there except time, which is not a key factor in the case, and a specific incident. If CALJIC No. 4.71 had not been given (as should have been the case) it is not reasonable to believe that the jurors could have, with the evidence available, singled out any one act or incident on which to convict the defendant. For this reason alone it would be necessary to reverse. This is not due to failure to prove that an

[1]By a supplemental letter, the People rely on *People* v. *Fremont* (1941) 47 Cal.App.2d 341 [117 P.2d 891]. That reliance is misplaced. *Fremont* was concerned (so far as any issue herein involved) only with the time at which the prosecution may be required to elect between various possible dates. No question as to the propriety of any instruction was either raised or determined.

act occurred on a specific date or time, rather there is a failure to prove any one act within the statute of limitations (Pen. Code, § 800). The evidence was too general to support a verdict even though that general evidence was, in its bulk, substantial. There is no possible way of singling out one individual act from among those claimed and saying there is substantial evidence to prove that act.

## III

### Should the Trial Court Have Granted Defendant's Motion for Mistrial After Count III Was Stricken and, if not, Did the Trial Court Err in Admitting the Subsequent Testimony of Catherine L.?

Defendant brings these issues forward and argues them separately. Since, however, they are both involved with one question of whether the defendant was unfairly prejudiced by the testimony of Catherine L., the arguments will be handled as one issue.

■ Defendant's basic contention is that a mistrial should be granted based on the following facts: (1) Count III was read to the jury; (2) the prosecutor in his opening statement said he would prove count III; (3) testimony by Joan L. of her conversation with Catherine about Catherine's relationship with the defendant was allowed; and (4) Catherine L. was allowed to testify to acts beyond the statute of limitations both before and after count III was stricken. The defendant argues that this placed acts that, by statute of limitations, were unchargeable and could not otherwise have been introduced before the jury. It is his belief that such evidence was improper as it showed neither intent nor characteristic method, plan or scheme under which testimony of a prior uncharged offense may be allowed.

■ The contentions that a mistrial should be granted because of count III being read to the jury and the fact that the prosecutor stated his intent to prove that count in and of themselves are meritless. It is not unusual for a charge to be dropped after the opening statement. These arguments would have no validity no matter what the outcome of this court's decision on the testimony of Joan L. and Catherine L.

As to the testimony of Joan L., it could be considered prejudicial only if the testimony of Catherine was improperly admitted. If Catherine's testimony was proper, then the facts gained from Joan L.'s testimony

would have also come from the proper testimony of Catherine and would constitute harmless error.

All arguments ultimately center around the admissibility of Catherine's testimony. Both defendant and People cite *People* v. *Kelley* (1967) 66 Cal.2d 232 [57 Cal.Rptr. 363, 424 P.2d 947] as the definitive California Supreme Court case regarding the admissibility of evidence of other uncharged crimes. It also is a Penal Code section 288 case of lewd conduct.

People place much emphasis on the following statement in *People* v. *Cramer* (1967) 67 Cal.2d 126, 129 [60 Cal.Rptr. 230, 429 P.2d 582], which in effect reiterated the same idea found in *Kelley* at pages 242 and 243: ". . . Such evidence is admissible as showing a common scheme or plan where the offenses are not too remote, are similar to the offense charged, and are committed with persons similar to the prosecuting witness."

There is no doubt that the testimony of Catherine fits into this mold easily. However, this is a general statement of the test in a case where the court also reiterated a clear second test that was more specific in nature, which also had been given in their *Kelley* decision (at p. 239). It stated in *Cramer* (at pp. 129-130) as follows:

"Several decisions have held that the test of admissibility of evidence of another offense offered to prove common design plan, or *modus operandi* is whether there is some clear connection between that offense and the one charged so that it may be logically inferred that if defendant is guilty of one he must be guilty of the other. Or as the matter is sometimes stated, the other offenses offered to prove pattern, scheme or plan are sufficiently similar and possess a sufficiently high degree of common features with the act charged where they warrant the inference that if the defendant committed the other acts he committed the acts charged. [Citations.] Other cases have spoken of a 'peculiar or characteristic behavior pattern' [citations] 'bizarre details' [citation] and 'striking similarities' [citations].

"Tested by these standards evidence of the offense committed with James was admissible."

Where there is a more specific test, that test should be followed. Therefore, the People must prove that the acts testified to by Catherine "possess a sufficiently high degree of common features within the act

charged," (see *People* v. *Cramer, supra,* at p. 129.) and that it "logically, naturally and by reasonable inference" (*People* v. *Kelley, supra,* at p. 239) would prove the act charged. *People* v. *Kelley* makes this requirement even more explicit by the following statement: "The evidence should be received with 'extreme caution,' and if its connection with the crime charged is not clearly perceived, the doubt should be resolved in favor of the accused." (See *People* v. *Kelley, supra,* at p. 239.)

Under this test of admissibility, the People fall short of the required goal. In total the similarities consist of the following: (1) both sisters allege numerous occasions; (2) they were both under the legal age; (3) the opportunity and the place of the acts were established at the same time by the relationship of the defendant to the family. This third consideration cannot be considered as it is the same single fact for both girls. To be "similar" there must be two separate but comparable facts. It would be different if the girls were from different homes and the defendant had used the same modus operandi to enable such acts to occur. It is impossible for situations which are established from the relationship in this case to be considered similar when they are in reality one.

The People have not given a "sufficiently high degree of similarities" which could be considered "striking" or "bizarre" or "peculiar of characteristic behavior" which would satisfy the test for the testimony to be admitted. It is impossible logically to infer that if defendant had done the acts claimed by Catherine's testimony, he must also have done with Loren the acts charged.

Under the circumstances this court normally would reverse and grant a mistrial. ■ However, due to the decision in *People* v. *Kazee* (1975) 47 Cal.App..3d 593 [121 Cal.Rptr. 221], this court is unable so to act. *Kazee* is a second district case decided in division 5 on April 28, 1975. In that case admitted evidence of similar acts was upheld even though there was (p. 595): "[n]o real contention made by the People that the modus operandi of defendant vis-a-vis [defendant and respondent], evidenced such striking similarities that it points to defendant as the perpetrator of the offenses against S. and C." What the court is saying in that case is that there is no requirement that the evidence to be admitted, logically or reasonably infers the crime charged.

The following statement is found in *People* v. *Stanley,* 67 Cal.2d 812, 817 [63 Cal.Rptr. 825, 433 P.2d 913]: ". . . where the basic issue of the

case is the veracity of the prosecuting witness and the defendant as to the commission of the acts charged, the trier of fact is not aided by the evidence of other offenses where that evidence is limited to the uncorroborated testimony of the prosecuting witness."

The inference gained from this would lead one to the conclusion that the supposed victim of the crime charged cannot attempt to make her testimony more credible by saying that the defendant had committed other uncharged crimes against her.

The court in *Kazee* seems to have concluded that since no testimony by the prosecuting witness concerning other uncharged offenses is admissible that all testimony of such offenses, if from individuals other than the prosecuting witness, is admissible. The following from *Kazee* makes this position more apparent: "*Stanley* is thus a clear indication of the *Covert* theory that the rationale for admissibility of evidence of sexual misconduct with others, in cases where there is no issue as to identity, absence of accident, and so forth, is simply corroboration of the complaining witness. Where such corroboration comes from the mouth of another witness, we admit it. When it consists of nothing but the complaining witness corroborating himself, we reject it." (*Kazee* at p. 596.)

In *Covert*, (*People v. Covert* (1967) 249 Cal.App.2d 81 [57 Cal.Rptr. 220]) the court demonstrated that in a case such as this the admissibility of similar acts of sexual misconduct cannot be justified on any theory except as a possible attempt to buttress the credibility of the prosecuting witness against the inevitable defense challenge.

The court in *Kazee* seems to have abandoned all tests laid down in *Kelley* and *Cramer* so as to allow any similar uncharged offense to be allowed as evidence so long as it comes from someone other than the prosecuting witness. How *Covert* can be considered a basis for such a theory is impossible to understand since the California Supreme Court used the same tests found in *Kelley* and *Cramer* to decide it. They reiterated the argument that California decisions "exclude evidence of similar offenses which is relevant only to prove the defendant's bad character, that is, his criminal disposition, because its probative value is outweighed by its prejudicial effect." Also reiterated was the "general tests of admissibility" which was a restatement of the "logically, naturally, and by reasonable inference" test in *Kelley* and *Cramer*.

It is obvious that *Covert* and *Stanley* were never intended to overturn *Kelley* and *Cramer*. The danger of allowing evidence of similar uncharged violations was discussed in *Kelley* as part of a discussion of intent, and vehemently rejected by that court as can be seen from the following: "It is argued that the other offenses in the instant case were admissible . . . to infer . . . intent required for the commission of the crime charged. If this were the rule, the common plan or design exception would be meaningless. Evidence of any 288a violation could be introduced in any 288a prosecution, and evidence of any other particular offense such as theft or possession of marijuana would be admissible in a prosecution for that offense as showing that defendant had the disposition to commit that particular crime. Such is not and should not become the law. Evidence of other crimes is inadmissible 'where it is offered solely to prove criminal disposition or propensity on the part of the accused *to commit the crime charged. . . .*' " (*Kelley* at p. 243.)

"Thus the jury was permitted to consider evidence of violations of section 288a that had little or no relevance in showing that defendant committed the crime charged. That such error was prejudicial is clear." (*Kelley* at p. 245.)

*Kazee,* if followed, would do exactly what the Supreme Court warned against, allow "evidence of any 288a violation" to "be introduced in any 288a prosecution."

Because our law is built on precedent, the court cannot turn its back on *Kazee* and is impelled to follow its standards, thereby allowing the evidence in the form of Catherine L.'s testimony to stand and rejecting defendant's contention.

## IV

### Did the Court Err in Refusing to Give CALJIC 2.70?

This issue raised by defendant revolves around the testimony of Joan L. as to an alleged conversation between her and the defendant after the charges had been filed against him in this case.

"Q. [by the prosecutor] All right. Did you ask him or did he tell you anything about these things that he was alleged to have done with Loren or Cathy?

"A. [by Joan L.] He said he felt that he still loved us and he was trying to help us." (RT 35.)

The defendant argues that the testimony amounts to an admission by implication. Further, that such admission required the CALJIC No. 2.70 instruction.

There is no merit to this argument. The statement admitted nothing other than his concern for the family. Neither did it imply any admission of guilt even when considered along with the other evidence.

This did not constitute an admission under CALJIC No. 2.70 and therefore there was no error on the part of the trial court.

### Conclusions

1. CALJIC No. 4.71, was in the context of this case, erroneously given.

II. The trial court erred in not granting the defense motion for acquittal as no single offense was ever proven nor was there "substantial evidence" on which the verdict could rest.

The judgment (order granting probation) is reversed.

Dunn, J., concurred.

**JEFFERSON (Bernard), J.**—I concur in the majority's reversal of the judgment of conviction but I do not agree with all of the reasoning set forth in the opinion. Thus, the majority states that Joan's testimony with respect to facts related to her by her sister, Catherine, a prosecution witness, regarding defendant's having sexual relations with Catherine, can be considered prejudicial only if Catherine's testimony was improperly admitted in evidence.

This is an erroneous statement—that such rank hearsay ceases to be prejudicial error when it is made by a witness who has testified at the trial. The majority does not discuss the question of the basis for admissibility of such hearsay testimony.

The only possible exception to the hearsay rule that might be applicable to Catherine's hearsay statements to Joan would be that of the prior-consistent-statement exception to the hearsay rule. The record,

however, does not support a theory that Catherine's hearsay statements to Joan to qualify for admissibility under the prior-consistent-statement exception to the hearsay rule set forth in Evidence Code sections 1236 and 791. (See Jefferson, Cal. Evidence Benchbook (1972) § 10.2, pp. 143-145.) I would predicate reversal of defendant's conviction on the error of the trial judge in admitting Joan's hearsay testimony as well as on the error stated by the majority.

I also disagree with the majority's opinion that the admission in evidence of Catherine's testimony that defendant had sexual relations with her—which constitutes evidence of uncharged offenses against defendant—was not improper. I consider that the admission into evidence of Catherine's testimony constitutes prejudicial error. I would include this error as one of the grounds for reversal of defendant's conviction.

Although discussing at some length the cases of *People* v. *Kelley* (1967) 66 Cal.2d 232 [57 Cal.Rptr. 363, 424 P.2d 947], *People* v. *Cramer* (1967) 67 Cal.2d 126 [60 Cal.Rptr. 230, 429 P.2d 582], *People* v. *Covert* (1967) 249 Cal.App.2d 81 [57 Cal.Rptr. 220], and *People* v. *Stanley* (1967) 67 Cal.2d 812 [63 Cal.Rptr. 825, 433 P.2d 913], the majority concludes that no error was committed in the admission of the other-crimes evidence against defendant because of the decision of *People* v. *Kazee* (1975) 47 Cal.App.3d 593 [121 Cal.Rptr. 221].

The majority takes the position that it is bound to follow *Kazee* although some doubt is expressed as to whether *Kazee* is in harmony with the principles set forth in *Kelley* and *Cramer.*

I know of no rule of law which requires us to be bound by a prior Court of Appeal decision, irrespective of our belief as to the correctness of that decision. The Courts of Appeal are bound by decisions of the California Supreme Court but are not required to follow prior decisions of the Courts of Appeal, regardless of which particular district or division rendered such prior decisions. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937]. "But it seems to be the clear policy of this state that its intermediate reviewing courts record their disagreement with existing law . . . . This policy has received its most recent expression by rule 976, California Rules of Court. That rule provides for publication of our opinions which 'criticize existing law,' even though they do not otherwise meet the rule's criteria for publication." (*Craig* v. *Superior Court* (1976) 54 Cal.App.3d 416, 424-425 [126 Cal.Rptr. 565] (conc. opn.).)

The charge against defendant in the instant case is that he committed sexual offenses against the minor victim, Loren. Defendant raises no issue as to the existence of the elements of the crimes charged and contends only that he was *not* the perpetrator. Under these circumstances, the testimony of Catherine, Loren's older sister, that defendant committed similar acts with her, is relevant to prove that defendant committed the crimes charged against Loren solely on the theory that such evidence establishes defendant's disposition, behavior pattern or character trait to commit the charged offenses against Loren and, therefore, should be held to be *inadmissible* by reason of Evidence Code section 1101, subdivision (a). (See *People* v. *Thornton* (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523 P.2d 267].)

In *Kazee,* the court held admissible, in an incest case, evidence that the defendant had had sexual relations with an older stepsister of the victim, his daughter. The *Kazee* court conceded that evidence that the defendant committed the uncharged offense against the victim's stepsister was not admissible under any theory of modus operandi or on the issue of identity, since no such issue was involved.

The *Kazee* court concluded that the only justifiable theory of admissibility was that the stepdaughter's testimony of the defendant's sexual relations with her became admissible as corroboration of the testimony of the daughter-victim and complaining witness. Thus, the theory of admissibility was that such evidence buttressed the credibility of the prosecuting witness against the inevitable defense challenge.

But *Kazee* does not offer any explanation of how the corroboration theory of admissibility gets around the prohibition of Evidence Code section 1101, subdivision (a), that character trait evidence, offered to prove that a defendant acted in accordance with his character trait and committed the offense in question, is inadmissible.

In my view, the *Kazee* decision is untenable and indefensible and should not be followed. Even though the theory of *Kazee* is that the uncharged incest evidence becomes admissible to corroborate the testimony of the victim, nevertheless, such evidence of the defendant's commission of a sex offense against the victim's stepsister proves only that defendant has a character trait or disposition to have sexual relations with his daughters, which leads to the inference that he committed the charged offense and had sexual relations with his daughter, the victim named in the charged offense.

The fact that the credibility of the victim witness is an issue in a sex case does not justify the admissibility of evidence that tends to corroborate that credibility if such evidence is in violation of established exclusionary rules of evidence.

In the case at bench, as in *Kazee,* the other-crimes evidence admitted against defendant clearly violated the exclusionary rule for character-trait evidence (Evid. Code, § 1101, subd. (a)), relevant only to prove that defendant committed the charged offense because he had a character trait, behavior pattern or disposition for committing such offenses. The fact that a victim's credibility as a witness constitutes a crucial issue in a sex case does not offer any logical basis for creating the concept of witness-credibility corroboration as justification for evading the prohibition against the admissibility of other-crimes evidence, relevant only as character-trait evidence to prove disposition or a pattern of behavior. (Evid. Code, § 1100.)

To accept the reasoning process of *Kazee* as sound is to totally disregard the distinctions made by Evidence Code section 1101, subdivision (a), and Evidence Code section 1101, subdivision (b), with respect to when evidence that a defendant committed an uncharged offense becomes admissible and when such evidence is to be excluded. The cardinal rule set forth in Evidence Code section 1101, subdivision (a), is that evidence that defendant committed some other crime is inadmissible as character evidence to prove that he committed the *charged* crime.

The exception for admissibility provided for in Evidence Code section 1101, subdivision (b), is limited to such evidence that is relevant to prove some fact (such as motive, intent, identity, absence of mistake or accident) other than reliance upon relevancy because such evidence establishes the defendant's disposition or pattern of behavior to commit such offenses.

To hold that defendant's commission of incest with the victim's sister comes within the exception of Evidence Code section 1101, subdivision (b), because such evidence corroborates the victim's story *necessarily* accepts the relevancy of such evidence as establishing the defendant's disposition or pattern of behavior to commit such offenses, from which the inference may be drawn that defendant acted in conformity with such disposition and behavior pattern and committed the offense charged against the victim. This reasoning process is directly contrary to the express language of Evidence Code section 1101, subdivisions (a) and (b).

The view that evidence of a defendant's commission of a similar *sex* offense is admissible automatically to support the credibility of the victim's testimony is one that may just as logically be advanced to support admissibility in every *nonsex* case in which a defendant denies he committed the crime charged contrary to the victim's testimony. Such a view appears to me to constitute an emasculation of the statutory prohibition (contained in Evid. Code, § 1101) against the admission of evidence that defendant committed a similar offense when its sole relevancy is that of proof of a disposition or character trait to commit the charged offense.