[Crim. No. 35080. Second Dist., Div. Three. Jan. 26, 1981.]

**THE PEOPLE, Plaintiff and Respondent, v.
SALVADOR MOTA, Defendant and Appellant.**

COUNSEL

Michael S. Mink, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Pounders and John R. Gorey, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KLEIN, P. J.—Appellant Salvador Mota (Mota) appeals from a jury trial conviction of kidnaping (Pen. Code, § 207), count I; robbery (Pen. Code, § 211), counts III through V; and rape (Pen. Code, § 261, subds. 2, 3), counts VI through VIII. Allegations that Mota used a firearm, to wit, a revolver, in the commission of the kidnaping and robberies within the meaning of Penal Code sections 12022.5 and 1203.06, subdivision (a)(1), were found to be true. Further allegations that a principal was

armed with a firearm, to wit, a revolver, in the commission of the kidnaping and robberies, said arming not being an element of these offenses, within the meaning of Penal Code section 12022, subdivision (a), were also found to be true.

Probation was denied, and Mota was sentenced to state prison for a term of 12 years.

## FACTS

Since Mota does not contend that the evidence is insufficient to support the verdicts (judgment), it is not necessary to set forth the evidence in any detail, except as it is necessary to make clear our ruling on two of the points urged for reversal.

Around 11 p.m. on July 31, 1978, a young woman named Erica was sitting in a car which was parked in a restaurant parking lot in Compton, waiting for friends. When her three friends got into the car and her boyfriend turned on the ignition, Mota and his companion, Norman Miles, armed with a revolver and a knife, respectively, approached the car.

After robbing the occupants of their valuables, they opened the car door and pulled Erica out. Miles and Mota, holding his revolver to Erica's back, led her to a waiting van.

Once in the van, Erica was forced to lie supine on a mattress on the floor in the back of the van, after which her clothing was removed. She was then subjected to continuous multiple acts of forced sexual intercourse with Mota, Miles and another unidentified man while Juan Castillo drove the van. When Mota was engaged in intercourse, the other two men were fondling Erica's breasts and genital area.

The van was driven to a secluded dirt area in the vicinity of Long Beach Harbor, eight or nine miles from the scene of the robbery. At approximately 1 a.m. on August 1, a security officer observed the parked van and approached it to investigate, and when the van sped off, he gave pursuit, eventually succeeding in pulling it over. Erica jumped out of the van and ran to the officer, exclaiming, "Thank God, you saved my life. I've just been raped."

The driver was immediately arrested, and Mota and Miles were apprehended at a location to which they had fled when the van was stopped. A subsequent search of the van revealed a loaded revolver, two knives, the items taken in the robbery, and Erica's pantyhose.

## CONTENTIONS

Mota contends that the trial court prejudicially erred (1) in denying his motion to force the prosecution to elect which incident it was relying upon in counts VI, VII and VIII, (2) in admitting the officer's testimony concerning Erica's statement to him, and (3) in enhancing his subordinate sentence as to counts III, IV and V for firearm use pursuant to Penal Code section 1170.1.

## DISPOSITION

As we find Mota's final contention to be meritorious and his other contentions lacking in merit, we modify the sentences accordingly and affirm the judgment in all other respects.

## DISCUSSION

Mota's first contention that the trial court erred in failing to force the prosecution to elect which incident it was relying upon in each of the rape counts is unpersuasive.

Mota bases this argument on the line of cases that stand for the proposition that "'where there are multiple acts placed before a jury, each being a separate chargeable offense in itself, the prosecution must elect the act on which the charge will stand,' or otherwise 'the jurors [might] range over the evidence at will and pick out any one of the offenses upon which to found its verdict.' [Citations.]" (*People* v. *Yarber* (1979) 90 Cal.App.3d 895, 910 [153 Cal.Rptr. 875]; *People* v. *Creighton* (1976) 57 Cal.App.3d 314, 318 [129 Cal.Rptr. 249], disapproved on other grounds in *People* v. *Thomas* (1978) 20 Cal.3d 457, 468 [143 Cal.Rptr. 215, 573 P.2d 433].) Mota also urges and we agree that "[d]ue process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial. [Citations.]" (*In re Hess* (1955) 45 Cal.2d 171, 175 [288 P.2d 5]; *People* v. *Yarber, supra,* 90 Cal.App.3d 895,

910; see *Lambert* v. *California* (1957) 355 U.S. 225, 228 [2 L.Ed.2d 228, 231, 78 S.Ct. 240].)

However, the cases relied on by Mota which required some election by the prosecution are all distinguishable from the instant fact situation. None of the election cases involved a gang rape with repeated and continuous acts of sexual intercourse within the relatively short period of approximately one hour, taking place in one location.

The election cases feature circumstances wherein the criminal acts were separated by days, weeks or months, and sometimes the acts occurred in different places, thus forcing the prosecution to choose which act they were relying upon so that the defendant could be put on notice and properly defend against the charges. (*People* v. *Williams* (1901) 133 Cal. 165 [65 P. 323] (charge of rape, and victim, who was thirteen at the time of the criminal acts, testified that she lived with the defendant for four months and had intercourse nearly every day during that time); *People* v. *Castro* (1901) 133 Cal. 11 [65 P. 13] (information charging defendant with rape on June 30; evidence at trial disclosed four separate acts extending over several months, and no one act was proven to have been committed on June 30); *People* v. *Yarber, supra*, 90 Cal.App.3d 895 (offenses committed on two dates, two days apart); *People* v. *Alva* (1979) 90 Cal.App.3d 418 [153 Cal.Rptr. 644] (defendant charged with incest, lewd and lascivious acts upon a child under fourteen years, and with unlawful sexual intercourse, and evidence showed the commission of a number of sexual acts over a six-month period); *People* v. *Crume* (1976) 61 Cal.App.3d 803 [132 Cal.Rptr. 577] (defendant charged with violation of Penal Code section 288 committed "within three years last past," the offense as to which evidence was first introduced was deemed to constitute the offense charged); *People* v. *Creighton, supra*, 57 Cal.App.3d 314 (defendant charged with violating Penal Code section 288 some time between Oct. 6, 1972 and Oct. 6, 1973); *People* v. *Moreno* (1973) 32 Cal.App.3d Supp. 1 [108 Cal.Rptr. 338] (two criminal acts which occurred at different locations and were separated by a half-hour time interval); *People* v. *Gavin* (1971) 21 Cal.App.3d 408 [98 Cal.Rptr. 518] (two critical dates about one month apart, and defendant charged with criminal acts "on or about" the latter date); *People* v. *Ruiz* (1920) 48 Cal.App. 693 [192 P. 327] (information charged one count of attempted rape; evidence at trial proved three distinct and separate attempts took place on the same day, separated by time and in different locations.)

In the instant case, the trial court partially granted Mota's motion in requiring that the prosecution amend the information to name the individual who physically committed the act in counts VI, VII and VIII. However, the trial court properly refused to require further specification as to which act of sexual intercourse committed by the named individual was the act relied on by the prosecution. The trial court observed that "[t]here has been no case cited to [it] that covers this precise situation...," but that Mota "could be properly charged with one count of rape, even though it was alleged that he had assaulted the victim three or four times...over a short period of time. The People would not be, under the existing law, required to decide which of the penetrations occurring over a very short period of time was relied upon...."

 The law does recognize an exception to the rule requiring election "'where a series of acts form part of one and the same transaction, and as a whole constitute but one and the same offense.' [Citation.]" (*People* v. *Jefferson* (1954) 123 Cal.App.2d 219, 221 [266 P.2d 564]; *People* v. *Simon* (1913) 21 Cal.App. 88 [131 P. 102].) The fact situation in the instant case falls within this exception. The many continuous acts of forced sexual intercourse which were committed by each assailant were part of the same event since they were all committed within an hour's time in the back of the van. It is irrelevant that the van was moving or was moved from one location to another.

Under the exception rationale, the prosecution was not compelled to further elect as to the specific acts upon which it was relying. Numerous cases hold that the prosecution need not inform "the defense as to which specific offense it [intends] to rely upon for a conviction [where] the indictment [charges] but one offense and the evidence [tends] to prove two or more separate and distinct acts, either one of which would have supported the charge of rape, where the acts complained of were perpetrated on the same occasion and within a few minutes of each other, and constituted one continuous felonious act." (*People* v. *Lawrence* (1956) 141 Cal.App.2d 630, 632-633 [297 P.2d 144]; *People* v. *Enright* (1934) 140 Cal.App. 649, 650-651 [35 P.2d 1033]; see *People* v. *Fontana* (1934) 138 Cal.App. 379, 382-383 [32 P.2d 160].)

Furthermore, it would have been unreasonable to compel the prosecution and the hapless, dazed victim to delineate with specificity each act of sexual intercourse by each assailant where she was being repeatedly

and continuously raped and assaulted by three men inside the back of the van in a short period of time.

As to the notice requirement, due process requires only that an accused be notified of the charges against him so that he may have a *reasonable opportunity* to prepare and present his defense. (*In re Hess, supra*, 45 Cal.2d 171, at p. 175.) Here, Mota was constitutionally adequately so advised. Mota's contention to the contrary is an affront to the reasonableness that is the law.

Mota next asserts that the trial court abused its discretion under Evidence Code section 352 by admitting Robinson's testimony relating to Erica's statement, "Thank God, you saved my life. I've just been raped." Again, we disagree.

"Under Evidence Code section 352, a court may in its discretion exclude evidence if the probative value of the evidence is substantially outweighed by the probability that its admission will create substantial danger of undue prejudice or mislead the jury." (*People v. Blair* (1979) 25 Cal.3d 640, 664 [159 Cal.Rptr. 818, 602 P.2d 738]; *People v. Lassell* (1980) 108 Cal.App.3d 720, 724 [166 Cal.Rptr. 678]; *People v. Guillebeau* (1980) 107 Cal.App.3d 531, 549 [166 Cal.Rptr. 45].) Probative value depends upon the degree of the relevancy, materiality and necessity of the evidence sought to be introduced. (*People v. Schader* (1969) 71 Cal.2d 761, 774 [80 Cal.Rptr. 1, 457 P.2d 841]; *People v. Stanley* (1967) 67 Cal.2d 812, 818 [63 Cal.Rptr. 825, 433 P.2d 913].) "Evidence Code section 352 vests the court with broad discretion to weigh the prejudicial effect of proffered evidence against its probative value. [Citation.]" (*People v. Pierce* (1979) 24 Cal.3d 199, 211 [155 Cal.Rptr. 657, 595 P.2d 91]; *People v. Cordova* (1979) 97 Cal.App.3d 665, 670 [158 Cal.Rptr. 852].)

The trial court ruled that Erica's statement to Robinson was admissible under the excited utterance or spontaneous declaration exception to the hearsay rule. (Evid. Code, § 1240.) It then went on to note, "Of course one of the elements of rape, as well as the other sexual acts that are alleged, is that they were accomplished through not only force, but also fear and the statement of the witness would tend to establish that she was in fear so it would be relevant on that count. [¶] In any event, I don't think it's prejudicial."

We do not find that the trial court abused its discretion in so concluding.

■ Mota's final contention that the trial court erred in adding an eight-month enhancement to his sentence on each of the three robbery counts for firearm use pursuant to Penal Code section 1170.1 is meritorious.

In *People* v. *Harvey* (1979) 25 Cal.3d 754, 761 [159 Cal.Rptr. 696, 602 P.2d 396], the court concluded that Penal Code "section 1170.1, subdivision (a), permits enhancement only for those *specific offenses* listed in [Penal Code] section 667.5, subdivision (c).... [T]he offense of robbery with firearm use is not specifically listed in that latter section...." In direct response to the *Harvey* case, the Legislature amended Penal Code section 1170.1, subdivision (a), to include robbery with firearm use. This measure became law on May 29, 1980. In commenting on the legislative action and its application, the court in *People* v. *Fulton* (1980) 109 Cal.App.3d 777, at page 783 [167 Cal.Rptr. 436], stated that because "[t]he effect of the legislation was to change [Mota's] punishment by making it [two years] greater..., it is of an ex post facto nature." (See also *People* v. *Ward* (1958) 50 Cal.2d 702 [328 P.2d 777], disapproved on other grounds, *People* v. *Morse* (1964) 60 Cal.2d 631, 649 and fn. 2 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810].)

Accordingly, Mota's sentence is ordered modified by reducing it from 12 years to 10 years. In all other respects, the judgment is affirmed.

Allport, J., and Potter, J., concurred.